UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| George Taylor, *Plaintiff*, v. Alma Martija, *et al.*, *Defendants*. | No. 24 CV 306 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

George Taylor, appearing *pro se*, filed this lawsuit against the medical director of DuPage County Jail and unknown employees of the DuPage County Sheriff's Office, alleging that Defendants provided inadequate medical care in violation of his Fourteenth Amendment rights. *See* 42 U.S.C. § 1983. Specifically, he alleges that the medical director failed to renew his prescription for Clobazam, which caused him to suffer 50 seizures while he was detained at the Jail.

Before the court is Plaintiff's motion for sanctions [dkt. 38][1] and Defendants' motion for summary judgment [dkt. 46]. For the following reasons, Plaintiff's motion is denied, and Defendants' motion is granted.

**I.   Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures that parties must follow when filing or opposing motions for summary judgment. *See* N.D. Ill. Local R. 56.1. The moving party must file a "statement of material facts that complies with Local Rule 56.1(d) and that attaches the cited evidentiary material." L.R. 56.1(a)(2). The statement of material facts must contain concise numbered paragraphs and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." L.R. 56.1(d). The court has discretion to "disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2). The non-moving party must file a response to the movant's statement of facts. *See* L.R. 56.1(b)(2). The response must contain numbered paragraphs that correspond to the numbered paragraphs in the movant's statement of facts and cite specific evidentiary material when disputing an asserted fact. *See* L.R. 56.1(e). Compliance with the Local Rules is required, even for pro se litigants. *See Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009). A party moving for summary judgment

---

[1]   Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

against a *pro se* litigant is required under Local Rule 56.2 to provide them with an explanation of the summary-judgment procedure.

Consistent with Local Rule 56.1, Defendants filed a statement of material facts which included numbered paragraphs and citations to the record. [Dkt. 48.] And as required by Local Rule 56.2, Taylor was served with a "Notice to Unrepresented Litigant," setting forth the procedures for opposing summary judgment and explaining that Taylor must "file, as separate documents," a response to Defendants' statement of facts, a statement of additional facts, and a memorandum of law. [Dkt. 49.]

Taylor's response is deficient in several respects. [Dkt. 65.][2] In some instances, Taylor disputes a statement of fact, but cites to no evidence in the record in support of his position. [*See e.g.*, Dkt. 65, ¶¶ 15, 18, 25, 38-39, 46, 50.] Other times, he disputes a fact and cites to evidence in the record, but the cited evidence falls far short of actually disputing the asserted fact. L.R. 56.1(e)(3). [*See e.g.*, Dkt. 65, ¶¶ 16, 24, 27, 28, 30.] Nor did he file a statement of additional facts, which, although not required, would have given him the opportunity to present his side of the story. L.R. 56.1(b)(3).

Any party, including a pro se litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though employee was pro se litigant"). Indeed, Taylor goes as far as saying that "[e]verything within [Defendants'] motion for summary judgment is based on deceptive falsehoods." [Dkt. 64 at 13.] Yet, he does not point to evidence in the record that genuinely puts many of Defendants' statements in dispute; simply saying that something is "false" will not controvert an asserted fact. *See* L.R. 56.1(e)(3); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.")

Consequently, the court accepts Defendants' version of the facts to the extent that it is properly supported by the evidence, *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012), but sets forth the facts as favorably to Taylor as the record and Local Rule 56.1 permit.

## II. Background

Taylor was diagnosed with epilepsy in 2008 and at that time, was prescribed Oxcarbazepine to control his seizures. [Dkt. 48, ¶¶ 6, 8.] Oxcarbazepine, however, became ineffective over time. [*Id.* ¶ 9.] And so, in 2022, Taylor was prescribed

---

[2] Taylor filed two virtually identical responses to Defendants' Local Rule 56.1 statement of material facts, filed at docket entries 62 and 65. For ease of reference, the court cites only to the filing at dkt. 65.

Clobazam to take in addition to Oxcarbazepine. [*Id.*] This combination of medications, Taylor says, effectively prevented his seizures. [Dkt. 64 at 6; Dkt. 65, ¶ 54.]

In March 2023, Taylor was arrested and detained at DuPage County Jail, where he remained until August 2023. [Dkt. 48, ¶¶ 10, 49.] During his time in custody, Taylor was treated by Dr. Alma Martija, the medical director at the Jail. [*Id.*, ¶ 52.] Upon Taylor's detainment, Dr. Martija renewed Taylor's prescription for Oxcarbazepine. [*Id.* ¶ 59.] She did not, however, renew Taylor's prescription for Clobazam, though she allowed him to finish the remaining Clobazam tablets that Taylor had on him at the time of his arrest (approximately 14 ½ tablets). [*Id.* ¶¶ 56, 59.] According to Dr. Martija, she reviewed Taylor's medical records from his neurologist's office at Central DuPage Hospital[3] and learned that Taylor had not followed up with his neurologist since April 2022, and the Clobazam that he had with him at the time of his arrest was obtained through a prescription from the emergency department at Central DuPage Hospital.[4] [*Id.* ¶¶ 53-55.] Dr. Martija testified that as of March 22, 2023, to her knowledge, Taylor did not have an active prescription for Clobazam from a neurologist. [*Id.* ¶ 58; Dkt. 50-8, ¶ 12 ("As of March 22, 2023, [Taylor] had no active prescription from his treating neurologist that I knew of.")]

Taylor disagrees with this characterization and accuses Dr. Martija of committing perjury about whether he had an active prescription for Clobazam. [Dkt. 65, ¶¶ 11, 58.] In support, he points to a prescription for Clobazam written by Dr. Roy Sucholeiki with Northwestern Neurology dated April 22, 2022. [Dkt. 61-1 at 1–2.] The prescription indicates that it authorized a sixty day supply of Clobazam with five refills and that it was sent to a Walmart pharmacy. [*Id.*] Defendants assert that the court should disregard this prescription because Taylor never disclosed it during discovery. [Dkt. 67 at 4.]

According to Taylor, his prescription for Oxcarbazepine was woefully ineffective. [Dkt. 64 at 6; Dkt. 65, ¶ 48.] Taylor says that he suffered more than 50 seizures while he was detained at the Jail [dkt. ¶ 16]; however, only two of the seizures are recorded in Jail records.[5] [Dkt. 48, ¶ 16.] Taylor's first reported seizure occurred on May 5, 2023. [*Id.*] In response to his seizure, Dr. Martija ordered a D-Dimer blood test and an EKG for Taylor to rule out a cardiac event. [*Id.* ¶¶ 61, 64.]

---

[3] Taylor says Defendants incorrectly state that his treating neurologist is at Central DuPage Hospital instead of Northwestern Medicine. [Dkt. 65, ¶ 53.] But Taylor's medical records clearly show that Central DuPage Hospital is part of Northwestern Medicine.

[4] Taylor disagrees with aspects of these asserted facts, but he does not meaningfully controvert it. He explains that he went to the emergency room for a "check up, not for a prescription," and then goes on to say that he was "unnecessarily" prescribed Clobazam while at the emergency room. [Dkt. 65, ¶¶ 53-55.] He does not otherwise identify record evidence that disputes Defendants' asserted facts.

[5] Taylor does not meaningfully controvert this asserted fact. He contends that Defendants "chose" not to document his reported seizures. [Dkt. 65, ¶ 16.] But he does not point to evidence in the record that supports this contention.

3

Taylor does not dispute that he refused the blood test. [*Id.* ¶ 65.] The second reported seizure occurred on May 31, 2023.[6] [*Id.* ¶ 66.] In response, Taylor was placed on medical watch until June 2. [*Id.*] During Taylor's time on medical watch, he did not experience any seizures. [*Id.*]

A week later, on June 8, Taylor saw Dr. Padmaja Gutti, a neurologist at Central DuPage Hospital. [*Id.* ¶ 22.] She prescribed Taylor Depakote in lieu of Clobazam (which Taylor refused to take), and she ordered Taylor to undergo an EEG to determine if there was any evidence of seizure activity. [*Id.* ¶¶ 24, 33, 34.] Taylor does not dispute that Dr. Gutti prescribed him Depakote and that he refused to take it, but he disagrees that this new medication adequately replaced Clobazam and he maintains that Dr. Gutti prescribed Depakote only because Dr. Martija "withheld" Clobazam from him. [Dkt. 65, ¶ 24.]

In the meantime, Taylor saw Dr. Martija for a follow-up appointment on July 20. [Dkt. 48, ¶ 70.] At that time, Dr. Martija reported that Taylor was stable and she did not observe any signs of seizure recurrence aside from the two reported seizures that Taylor experienced in May. [*Id.*] Taylor disputes whether he was stable, but cites no evidence to refute this assessment. [Dkt. 65, ¶ 70.] Dr. Martija did not believe that Taylor's two seizures in May were caused by his lack of access to Clobazam. [*Id.* ¶ 71.] Taylor disputes this assessment, but cites no evidence to refute it so it is deemed admitted. [Dkt. 65, ¶ 71.]

Taylor eventually underwent the EEG in August. [Dkt. 48, ¶ 34.] According to Dr. Gutti, the EEG did not show any signs of seizure-like activity, and so she concluded that Taylor's medication (Oxcarbazepine) was effective at preventing his seizures. [*Id.* ¶¶ 37, 40.]

Taylor was released from Jail in August. Shortly after his release, he filed this lawsuit alleging that he received inadequate medical care in violation of his Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I) and he sought indemnification by DuPage County (Count II). [Dkt. 1.]

### III. Taylor's Motion for Sanctions

The court begins by briefly addressing Taylor's motion for sanctions. [Dkt. 38.] Taylor requests the court to sanction Defendants because Dr. Martija "made false statements under oath" and because counsel committed perjury in their responses to his complaint. [*Id.* at 2–5.] The court interprets Taylor's motion as one under Rule 11,

---

[6] Taylor maintains that he "had recurring seizures that were ignored and undocumented," but he fails to cite to any evidence in the record supporting this statement, so it is deemed admitted. [Dkt. 65, ¶ 66.] Again, mere disagreement with an asserted fact—without pointing to evidence in support—is insufficient to controvert that fact.

4

which requires factual contentions in pleadings to have evidentiary support. Fed. R. Civ. P. 11(b)(3).

Taylor's motion fails because it is procedurally improper. A party seeking sanctions for a violation of Rule 11 must, before filing a motion, serve the motion on the opposing party and give them an opportunity to withdraw or correct the offending filing. Fed. R. Civ. P. 11(c)(2). If the filing is not withdrawn or corrected within 21 days, the aggrieved party may then file a motion for sanctions. A party requesting sanctions must substantially comply with the notice requirement. *See Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003) (finding that sending demand letter, rather than formal service of the motion, constituted substantial compliance); *see also N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 888 (7th Cir. 2017) (letter threatening sanctions within a few days was not substantial compliance under *Nisenbaum*). Taylor has not presented any evidence suggesting that he complied with the notice requirement.

Even if Taylor's motion was procedurally proper, it fails on the merits. Taylor accuses Defendants of committing perjury; he contends that in their answer to his complaint they make "blatant false statements" that are "relevant to the outcome of this case." [Dkt. 38 at 2.] For example, Taylor disagrees with Dr. Martija's answer that she "confirmed there was no current prescription for Clobazam." [*Id.* at 3–5; Dkt. 8, ¶¶ 18, 21.]

Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008). It only applies to statements "made under penalty of perjury." *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022); *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (witness testimony is made "under oath or affirmation"). Here, Defendants' answers to Taylor's complaint are admissions or denials, but they are not testimony within the meaning of perjury. Dr. Martija's recall of events may conflict with Taylor's memory, but that does not make it false testimony. In short, disagreement about the evidence and what it shows supplies no basis for imposing sanctions. *See Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915, 931 (N.D. Ill. 2018) (declining to impose sanctions because the "misrepresentations" were "by and large, factual disputes between the parties"). Taylor's motion for sanctions is denied.

### IV. Defendants' Motion for Summary Judgment

The court now turns to Defendants' motion for summary judgment. [Dkt. 46.]

#### A. Legal Standard

The summary-judgment stage has been referred to as "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440,

446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### B. Inadequate Medical Care

Under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee is entitled to objectively reasonable medical care while in pretrial detention. *See James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020). To survive summary judgment on his claim that that Dr. Martija violated his due process rights by providing inadequate medical care, Taylor must produce evidence from which a reasonable factfinder could conclude: (1) Dr. Martija "acted purposefully, knowingly, or recklessly when considering the consequences of [her] response to the medical condition at issue in the case"; and (2) "the challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances." *Id.* This two-step analysis presumes that the claim is about an objectively serious medical condition (which could be considered a third step).[7] *Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019). At the first step, "[a] showing of negligence or even gross negligence will not suffice." *James*, 959 F.3d at 318. And at the second step, the court focuses on "the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

Here, Taylor has not presented evidence from which a reasonable jury could find in his favor on either element of his claim. The record contains no evidence that Dr. Martija purposefully, knowingly, or recklessly caused Taylor to suffer seizures while at the Jail. Upon Taylor's detainment at the Jail, Dr. Martija reviewed Taylor's medical records and concluded that Taylor's prescription for Clobazam was discontinued by his neurologist pending reevaluation at his follow-up appointment.

---

[7] In a concurring opinion in *Hardeman v. Curran*, Chief Judge Sykes outlined "three elements" (not two) for a claim about inadequate medical care by a pretrial detainee under the Fourteenth Amendment. 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring). A pretrial detainee must prove (1) an "objectively serious" medical condition; (2) a purposeful, knowing, or reckless act by the defendant; and (3) an act that is "objectively unreasonable." *Id. See also Miranda v. Cnty. of Lake*, 900 F.3d 335, 347 (7th Cir. 2018) (noting that the defendants conceded that the pretrial-detainee plaintiff's medical condition was objectively serious); *but see Jump v. Vill. of Shorewood*, 42 F.4th 782, 796 fn.4 (7th Cir. 2022). Here, Defendants do not dispute that Taylor's epilepsy constitute an objectively serious medical condition. [Dkt. 47 at 6.]

[Dkt. 48, ¶ 58.] She then prescribed him Oxcarbazepine to prevent his seizures. [Dkt. 48, ¶ 59; Dkt. 50-8, ¶ 8.] These facts are not disputed. [Dkt. 65, ¶ 59.]

Taylor hotly disputes whether he had an active prescription for Clobazam, citing to an April 2022 prescription issued by Dr. Sucholeiki. [Dkt. 61-1 at 1.] He maintains that this was an active prescription for Clobazam that Dr. Martija disregarded, leaving him only with Oxcarbazepine, a drug that he says did not "properly protect him from seizures." [Dkt. 65, ¶ 11.]

Defendants argue that the April 2022 prescription was not produced during fact discovery, and therefore should be disregarded. [Dkt. 67 at 4.] Ordinarily, Rule 37(c)(1) places limits on the use of undisclosed documents: if a party fails to provide information as required by Rule 26, the party is not allowed to use that information in connection with a motion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019). Even if Taylor could make a harmlessness showing, other problems loom. For starters, Taylor points to no evidence from which a jury could reasonably conclude that Dr. Martija *knew* he had an active prescription in 2023 such that she acted purposefully, knowingly, or recklessly in response to Taylor's medical condition. Indeed, Dr. Martija avers that as of March 22, 2023, Taylor had no active prescription for Clobazam "from his treating neurologist that I knew of." [Dkt. 50-8, ¶ 12.] Based on her review of Taylor's medical records from Central DuPage Hospital, including the neurology department, Dr. Martija concluded that Taylor had not seen his neurologist since April 2022 and that continuing Oxcarbazepine was the proper course of treatment. [Dkt. 48, ¶¶ 53-55, 59.] Even assuming that there was a current, active prescription for Clobazam for Taylor, Dr. Martija's failure to discover it, at best, was negligent, which is not enough to establish constitutionally inadequate medical care. *See James*, 959 F.3d at 318.

Certainly, Taylor disagrees with Dr. Martija's decision not to renew his prescription for Clobazam. Yet, there is no evidence in the record supporting Taylor's assertion that his lack of access to Clobazam caused him to suffer numerous seizures, which dooms his claim. *See Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019) (mere disagreement with doctor's chosen course of treatment is insufficient to prevail on a Fourteenth Amendment claim). At bottom, a pretrial detainee is not entitled to demand specific care, nor may he prevail by merely second-guessing a medical professional's treatment decision.

Further, there is no evidence that Dr. Martija's actions were objectively unreasonable in light of the totality of the relevant facts and circumstances—the second part of the inquiry. Following Taylor's first reported seizure, it is undisputed that Dr. Martija ordered a D-Dimer blood test and an EKG for Taylor to rule out a cardiac event. [Dkt. 48, ¶ 64.] And in response to Taylor's second seizure, he was placed on medical watch. [*Id.*] Apart from his unsupported disagreement, there is nothing in the record showing that Taylor suffered additional seizures after these

7

steps were taken, or that Dr. Martija's actions were anything but reasonable. *See Williams v. Patton*, 761 F. App'x 593, 597 (7th Cir. 2019) (observing that pretrial detainee must show that medical treatment was such "a significant departure from professional norms" that it was objectively unreasonable). To be sure, Taylor says that he suffered "recurring seizures" while on medical watch that were "ignored and undocumented." [Dkt. 65 at 12.] But at the summary judgment stage, Taylor must support his assertions by pointing to evidence in the record. *Johnson v. Accenture LLP*, 142 F.4th 536, 542 (7th Cir. 2025) ("To survive summary judgment, a plaintiff must point to specific evidence creating a genuine dispute for trial."). On this record, a reasonable factfinder could not conclude that Dr. Martija's decision not to renew Taylor's prescription for Clobazam or her actions in response to Taylor's reported seizures was objectively unreasonable.

Taylor's remaining arguments fare no better. He says that the evidence presented by Defendants cannot be "trusted" because it is "based on deceptive falsehoods" [dkt. 64 at 13.]; merely accusing Defendants of lying—without any evidence in support—does not create a genuine dispute. *See SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 601 (7th Cir. 2019) (noting that a plaintiff cannot avoid summary judgment "with assumption or speculation" unsupported by the record); *Brown v. Carr*, 2022 WL 2316433, at *4 (E.D. Wis. June 28, 2022) ("[Plaintiff] cannot create a genuine dispute of material fact simply by claiming that his adversaries are lying"), *aff'd*, 2023 WL 2931291 (7th Cir. Apr. 13, 2023).

In the end, Taylor disagrees with Dr. Martija's decision not to renew his prescription for Clobazam during his detainment at the DuPage County Jail. There is no evidence from which a reasonable factfinder could conclude that Dr. Martija's decision to continue Oxcarbazepine but not Clobazam means that she acted purposefully, knowingly, or recklessly in response to Taylor's epilepsy or that her conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances. Taylor's claim therefore fails.

## V. Conclusion

Because there is no genuine dispute as to whether Defendants provided Taylor inadequate medical care while at the Jail (Count I), the court enters summary judgment in favor of Defendants. And because Taylor's claim for indemnification (Count II) is predicated on his constitutional claim, that claim is dismissed.

If Taylor wishes to appeal this judgment, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis must identify the issues that Taylor will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment

of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose ... has some merit" from a legal perspective). If Taylor elects to appeal, he will be responsible for the $605.00 appellate filing fee regardless of the outcome of the appeal.

Enter: 24-cv-306
Date: September 18, 2025

_____
Lindsay C. Jenkins